UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

DENNIS M. O'KANE,

               Plaintiff,

                  v.                       

                                       **MEMORANDUM & ORDER**
                                       10-CV-5325 (PKC)

JACOB LEW, SECRETARY OF THE
TREASURY DEPARTMENT, INTERNAL
REVENUE SERVICE[1],

               Defendant.

-----------------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

      Pending before the Court is the motion for summary judgment of Jacob Lew, Secretary of

the United States Department of the Treasury ("Defendant"). Defendant seeks to dismiss the

complaint of *pro se* plaintiff Dennis M. O'Kane ("Plaintiff") alleging discrimination based on his

disability of psoriasis in violation of the Americans with Disabilities Act of 1990 ("ADA").

Plaintiff alleges that Defendant discriminated against him by failing to promote him, setting

unequal terms and conditions of employment, retaliating against him for filing a discrimination

complaint, and for decreasing his grade of employment and associated pay. (Dkt. 1 at 3.)[2]

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Jacob Lew for Timothy Geithner as defendant in this action because, since the initiation of this action, Lew has succeeded Geithner as the Secretary of the United States Department of the Treasury. The Clerk of Court respectfully is directed to amend the docket to reflect this change.

[2] Although Plaintiff's complaint appears to allege age discrimination (age 55 at the time of the complaint), Plaintiff did not previously allege age discrimination in his complaint to the United States Equal Opportunity Commission ("EEOC"). That claim is therefore unexhausted and procedurally barred from this Court's review. *See Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (finding procedurally barred a discrimination claim not previously alleged in an EEOC complaint); *Butts v. N.Y. Dep't of Housing Preservation & Dev.*,

The ADA affords no remedy to federal employees, such as Plaintiff.  *See* 42 U.S.C. § 12111(5)(b) (providing that the United States or a corporation wholly owned by the government of the United States is not an "employer" for purposes of the ADA).  However, as Defendant concedes, a federal employee may pursue a claim of disability discrimination under the Rehabilitation Act.  29 U.S.C. § 701 *et seq*.; *see Rivera v. Heyman*, 157 F.3d 101, 103 (2d Cir. 1998) ("Section 501 of the Rehabilitation Act establishes a program within the federal government to encourage the employment of individuals with disabilities, and applies to 'each department, agency, and instrumentality . . . in the executive branch.'") (quoting 29 U.S.C. § 791(b)).  The Court therefore construes Plaintiff's complaint to set forth a claim for employment discrimination with respect to his disability under the Rehabilitation Act.

Plaintiff has not opposed Defendant's summary judgment motion (the "Motion").  Nor has Plaintiff responded to Defendant's Statement of Undisputed Facts.  *See S*outhern and Eastern Districts of New York Local Civil Rule 56.1 ("56.1 Statement" or "St.").  Due to Plaintiff's failure to oppose the Motion, where Defendant's Rule 56.1 Statement is cited and there is no contrary evidence in the record, the Court deems that fact to be undisputed and admitted. *Zhengfang Liang v. Café Spice SB, Inc.*, 911 F. Supp. 2d 184, 191 n.1 (E.D.N.Y. 2012) (generally, a party's "failure to respond or contest the facts set forth by the [moving party] in [its] Rule 56.1 Statement as being undisputed constitutes an admission of those facts") (citing *Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498, 504 (S.D.N.Y. 2003) (internal citations

---

990 F.2d 1397, 1401 (2d Cir. 1993) ("A district court only has jurisdiction to hear [discrimination] claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge.") (superseded by statute on other grounds).  Plaintiff was on notice that "[o]nly those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court."  (*See* Dkt. 1 at 3.)  Accordingly, the Court only considers Plaintiff's disability discrimination claim.

and quotations omitted)).[3]  However,  the Court construes the facts presented in the light most

favorable to Plaintiff, the non-moving party.  *See Capobianco v. City of New York*, 422 F.3d 47,

50 (2d Cir. 2005).  Moreover, the Court is mindful of its obligation to construe *pro se* pleadings

and submissions "to raise the strongest arguments they suggest."  *Triestman v. Fed. Bureau of

Prisons*, 470 F.3d 471, 472 (2d Cir. 2006).

*BACKGROUND*

I.    Factual Background

At all relevant times, Plaintiff, a white male, was employed by the United States Internal

Revenue Service ("IRS") in Holtsville, New York.  (St. ¶ 9.)[4]  Plaintiff began working for the

IRS in or about 2005.  (St. at ¶ 1, 3, 9.)  Plaintiff is diagnosed with severe psoriasis, which causes

his skin to flake off of his body and bleeding.  (St. ¶¶ 7–8.)  Plaintiff also has psoriatic arthritis,

which causes joint stiffness and pain.  (Dkt. 41-2 at 7.)

Plaintiff began his employment at the IRS as a tax examiner in the "Offer-in-

Compromise" unit.  (St. ¶¶ 9, 12.)  In or about July 2007, after returning from an agency-wide

work furlough, Plaintiff was re-assigned to the Automated Substitute for Return ("ASFR") unit,

which Plaintiff viewed as a "promotion."  (St. ¶¶ 18–19.)  In connection with his promotion,

Plaintiff received two weeks of ASFR unit training, after which he was subject to a probationary

period, during which his case work was subject to 100% review by his supervisors.  (St. ¶ 29.)

---

[3] This rule is well established in the Eastern and Southern Districts of New York.  *See, e.g.*, *In re
Towers Fin. Corp. Noteholders Litig.*, 996 F. Supp. 266, 275 (S.D.N.Y. 1998) (collecting cases).

[4] Although Defendant's Rule 56.1 statement refers to specific record citations to support its
statements, the Court cites to the Rule 56.1 statement, rather than the underlying record citation,
for ease of reference.

All employees were subject to similar work-review periods following ASFR training.  (St. ¶¶ 30–31.)

Following Plaintiff's transfer and standard ASFR training, Plaintiff received an additional two weeks of "on-the-job coaching," in response to Plaintiff's "substandard work performance" in his new unit.  (St.¶¶ 32, 34.)  During this time, Plaintiff's work continued to be subjected to 100% review.  (St. ¶ 41.)

On September 14, 2007, Plaintiff received a memorandum from his supervisor, Carol Donovan, advising him that he was going to be denied a "within-grade" pay increase due to poor work performance.  (St. ¶ 42.)  The memorandum identified the areas in which Plaintiff was underperforming and advised him that his work would continue to be reviewed on a 100% basis indefinitely.  (St. ¶¶ 41, 43, 44.)  The memorandum also notified Plaintiff that he would be given "a period of at least 60 calendar days to improve [his] performance to an acceptable level of competence" or face demotion or termination.  (St. ¶¶ 42–45.)

On or about November 23, 2007, Plaintiff received an anonymous letter from a self-described co-worker, which discussed Plaintiff's psoriasis, expressed sympathy for his condition, but also indicated that it made his colleagues uncomfortable.  The letter also suggested a potential treatment option.  (St. ¶ 47–48; Dkt. 41-8 (Exhibit G).)  Plaintiff brought the letter to Ms.  Donovan, who promptly conducted a meeting with the ASFR staff (without Plaintiff present) during which she admonished them that sending the letter was inappropriate.  (St. ¶ 49.) Approximately one year later, on November 21, 2008, Plaintiff filed with the IRS a discrimination complaint in response to receiving the letter, but eventually withdrew the complaint because he feared retribution.  (St. ¶ 51.)

Although it does not appear in any of Plaintiff's submissions, the record reflects that Plaintiff was terminated in or about February 2012 (*see* Dkt. 41-2 at 18), approximately 15 months after the initiation of this action.

II.    EEOC Investigation and Appeal

On November 17, 2008, Plaintiff filed a complaint for disability discrimination and retaliation with the EEOC.  (St. ¶ 52; Dkt. 41-9 (Exhibit H).)  Plaintiff's EEOC complaint alleged the same discrimination as this lawsuit.  Following an investigation, the EEOC determined that Plaintiff had failed to prove that Defendant had subjected him to discrimination, retaliation, or a hostile work environment as alleged.  (Dkt. 41-9 at 2.)  Plaintiff did not request a hearing in the EEOC proceedings.  (Dkt. 41-9 at 2.)

On March 18, 2010, Plaintiff filed an appeal with the EEOC regarding its determination. (Dkt. 1 at ECF 6.)  In a decision dated August 19, 2010, following *de novo* review, the EEOC affirmed the finding of no discrimination.  (Dkt. 41-9 at 5.)  The EEOC specifically found that Plaintiff had not shown that he was discriminated or retaliated against on the basis of his disability or that he was subjected to a hostile work environment.  (Dkt. 41-9 at 5.)  The EEOC specifically found that the anonymous letter he received regarding his psoriasis was not "by itself [] sufficiently severe or pervasive to constitute a hostile work environment."  (Dkt. 1 at ECF 8.)

Plaintiff initiated this lawsuit on November 17, 2010.  (Dkt. 1.)

*SUMMARY JUDGMENT STANDARD*

Summary judgment may be granted only if the submissions of the parties taken together "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. Proc. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–252 (1986).  "The moving party bears the burden of establishing the absence of

any genuine issue of material fact," *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010); *see Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006), after which the burden shifts to the nonmoving party to "come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011); *see also F.D.I.C. v. Great American Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine issue of fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

The nonmoving party can only defeat summary judgment "by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in [its] favor, to establish the existence of" a factual question that must be resolved at trial. *Spinelli v. City of New York*, 579 F.3d 160, 166 (2d Cir. 2009) (internal quotations and citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (alterations in original); *see also Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 56–57 (2d Cir. 2012); *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005). The nonmoving party cannot avoid summary judgment simply by relying "on conclusory allegations or unsubstantiated speculation," *Jeffreys*, 426 F.3d at 554 (quotations and citations omitted); *see also DeFabio v. East Hampton Union Free Sch. Dist.*, 623 F.3d 71, 81 (2d Cir. 2010); and must offer "some hard evidence showing that its version of the events is not wholly fanciful." *Miner*

*v. Clinton Cnty., New York*, 541 F.3d 464, 471 (2d Cir. 2008).  Local Civil Rule 56.1(b) "requires a party moving for summary judgment to submit a statement of the allegedly undisputed facts on which the moving party relies, together with citation to the admissible evidence of record supporting each such fact. . . . If the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted."  *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("The facts set forth in the moving party's statement 'will be deemed to be admitted unless controverted' by the opposing party's statement.") (citing Local Rule 56.1(c)); Local Civ. R. 56.1(a)–(c).  However, "a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." *Holtz*, 258 F.3d at 74; *see also N.Y. Civil Liberties Union v. Grandeau*, 528 F.3d 122, 132 (2d Cir. 2008).  "[A]llegations . . . cannot be deemed true simply by virtue of their assertion in a Local Rule 56.1 statement."  *Id.* at 73; *see also Vermont Teddy Bear Co., Inc. v. 1–800 Beargram Co.*, 373 F.3d 241, 245 (2d Cir. 2004) ("[T]he district court may not rely solely on the statement of undisputed facts contained in [a] 56.1 statement . . . [and] must be satisfied that the citation to evidence in the record supports the assertion.").  "While the trial court has discretion to conduct an assiduous review of the record in an effort to weigh the propriety of granting a summary judgment motion, it is not required to consider what the parties fail to point out."  *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 292 (2d Cir. 2000) (quotations and citations omitted); *see also 24/7 Records, Inc. v. Sony Music Entm't, Inc.*, 429 F.3d 39, 46 (2d Cir. 2005); *Amnesty America v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) (holding that Rule 56 "does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute").

The failure to submit a Rule 56.1 counterstatement in opposition to a motion for summary judgment motion does not mean that the motion is to be granted automatically.  Where a party chooses not to respond to a movant's motion for summary judgment, the district court still is obligated to determine whether summary judgment is appropriate.  *See Fabrikant v. French,* 691 F.3d 193, 215 n.18 (2d Cir. 2012); *Vt. Teddy Bear Co.,* 373 F.3d at 244 ("[W]here the non-moving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.") (internal citations and quotation marks omitted).  An unopposed motion for summary judgment may be granted "only if the facts as to which there is no genuine dispute show that the moving party is entitled to judgment as a matter of law."  *Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir. 1996) (citations and internal quotation marks omitted).

The Second Circuit has provided additional guidance with respect to motions for summary judgment in employment discrimination cases:

> We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions.  *See, e.g.*, *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).  Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact," *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997), and "may be appropriate even in the fact-intensive context of discrimination cases."  *Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)).  Nonetheless, "even in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for

summary judgment." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997).  "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper."  *Gallo v. Prudential Residential Servs., Ltd. P'Ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

*DISCUSSION*

I.      Rehabilitation Act

Because Plaintiff's discrimination claim is not cognizable under the ADA, the Court construes his complaint to be pursuant to the Rehabilitation Act.  The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability . . . be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."  29 U.S.C. § 794(a) (preempted by other legislation with respect to employees of the United States Transportation Security Administration); *see also* 29 U.S.C. § 791(b).  The Rehabilitation Act further provides that a claim brought pursuant thereto should be evaluated under the same analytical rubric as claims brought under the ADA.  29 U.S.C. § 794(d).

A claim of disability discrimination under the ADA is examined under the well-known framework set forth by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972).  Under the framework, to defeat a motion for summary judgment the plaintiff first must establish a prima facie case of discrimination.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).  The plaintiff's burden to establish a prima facie case is "*de minimis*."  *Tomassi v. Insignia Fin. Grp, Inc.*, 478 F.3d 111, 114 (2d Cir. 2007).  If the plaintiff establishes a prima facie case, a rebuttable presumption of discrimination arises, and the burden of production shifts to the defendant to set

forth a legitimate, non-discriminatory reason for its adverse action against the plaintiff.  *Hicks*, 509 U.S. at 506–07.  If the defendant comes forward with a non-discriminatory reason, the "presumption, having fulfilled its role of forcing the defendant to come forward with some response, simply drops out of the picture."  *Hicks*, 509 U.S. at 510–11.  At that point, the sole remaining issue is "discrimination *vel non*," which requires the plaintiff to prove discrimination by a preponderance of the evidence.  *Reeves*, 530 U.S. at 143.  As part of this burden, the plaintiff must prove that the defendant's reason was mere pretext for discrimination.  *Id.*  Although the *McDonnell Douglas* framework shifts the burden of production between the plaintiff and defendant, at all times the burden of persuasion rests with the plaintiff to demonstrate discrimination.  *Hicks*, 509 U.S. at 518.

To establish a prima facie case of discrimination under the Rehabilitation Act, Plaintiff "must show: (1) he belonged to a protected class [*i.e.*, he was disabled]; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent."  *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (citing *Holcomb v. Iona College*, 521 F.3d 130, 138 (2d Cir. 2008)); *see also Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 722 (2d Cir. 1994).  A plaintiff's burden at the summary judgment stage is one of production, not persuasion, and accordingly involves no credibility assessments.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

a.  Plaintiff's Disability

The parties do not dispute that Plaintiff suffers from psoriasis.  However, it is not necessarily the case that Plaintiff's psoriasis constitutes a disability that qualifies for protection under the ADA or the Rehabilitation Act.  In determining whether a health condition qualifies as

10

a disability under the ADA and Rehabilitation Act, courts consider: (1) "whether the plaintiff suffer[s] from [a] physical or mental impairment," and (2) whether the plaintiff's impairment "substantially limit[s] [a] major life activity" as defined by the ADA. *Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 201 (2d Cir. 2004) (internal citations and quotations omitted).  Major life activities include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." *Missick v. City of New York*, 707 F. Supp. 2d 336, 252 (E.D.N.Y. 2010) (citing 29 C.F.R. § 1630.2(i)); *see also Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 870 (2d Cir. 1998) (defining and describing "substantial limitation of major life activity").  Importantly, "not every impairment that affect[s] an individual's major life activities is a substantially limiting impairment." *Ryan*, 135 F.3d at 870 (citing *Roth v. Lutheran Gen. Hosp.*, 57 F.3d 1446, 1454 (7th Cir. 1995)).

To demonstrate that he suffers from a physical impairment limiting a major life activity, "a plaintiff cannot rely on 'conjecture or surmise,' and 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Heilweil*, 32 F.3d at 723 (quoting *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (internal citations omitted) & (*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

In this case, Plaintiff seems to claim that his ability to work was substantially limited by his psoriasis-related impairments.  Plaintiff testified in his deposition:

> I was taking off under the [F]amily [M]dical [L]eave [Act] because I would make it two or three times a week to work and have a lot of trouble getting around.  Even [my supervisor] Pat Shivo, when I first started there, she was my first boss, she would see me get up to make a copy and she would say, 'You poor man, why don't you go home.'  I says, 'And do what?  I like to work, I like to be around people.'  So this is my boss telling me to go home and I didn't want to.  If I kneel down as part of my work, I can't get up.  I have to physically ask somebody to help me up.  (Dkt. 41-3 at 123.)

Plaintiff also testified having to "develop[] a system where [he would] take a whole box of stuff, as a clerk . . . and . . . stack the boxes on the chair and push that around.  People would see [him] . . . and say they were going to assign [him] the bottom draw[er] to put [his] work in." (Dkt. 41-3 at 123–24).

At the same time, however, Plaintiff minimizes the impact of his psoriasis-related impairments on his ability to work.  He testified at several points in the deposition that he was performing well at work and that he received good work reviews prior to his transfer to the ASFR unit.  (Dkt. 41-2 at 33, 75, 100.)  At no time did Plaintiff testify that he could not work or that his work was substantially limited.  Nor has Plaintiff submitted any medical evidence, such as letters or testimony from his doctors, or medical reports, showing the extent of his disability or that his ability to work was affected by his psoriasis-related impairments.  *See Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 195 (2002) ("Merely having an impairment does not make one disabled for purposes of the ADA."); *Jackson*, 297 F. Supp. 2d at 636 (plaintiff must establish that the alleged disability "significantly affected [his] ability to work or otherwise engage in a substantial life activity").  At most, the record reveals that Plaintiff's conditions—psoriasis and arthritic psoriasis—were painful, uncomfortable, and socially isolating.  (*See, e.g.*, Dkt. 41-2 at 48 ("having this stuff is painful"), 79 ("[B]ecause this stuff hurts.  That's before I even developed psoriatic arthritis, which is a bad form of arthritis")).

Accordingly, Plaintiff has not satisfied his burden of proving that he is protected under the ADA and Rehabilitation Act.  *See, e.g.*, *Ongsiako v. City of New York*, 199 F. Supp. 2d 180, 185–86 (S.D.N.Y. 2002) (granting defendant summary judgment where plaintiff presented "no evidence from which a rational juror could infer that his impairment precluded him from performing a 'broad class of jobs'").  This action could be dismissed on this basis alone.  *See*

12

*Jackson v. Nor Loch Manor Healthcare Facility*, 297 F. Supp. 2d 633, 636 (W.D.N.Y. 2004), *aff'd* 134 Fed. App'x 477 (2d Cir. 2005) (granting summary judgment to defendant on ADA claim because the plaintiff "failed to submit any competent evidence that she had a physical impairment that substantially limited a major life activity"); *Debell v. Maimonides Med. Ctr.*, 09-CV-3491(SLT), 2011 WL 4710818 (E.D.N.Y. Sept. 30, 2011) (granting summary judgment to defendant on plaintiff's ADA claim for discrimination based on his psoriasis where there was no evidence that the plaintiff "suffers from a disability that limits a major life activity"); *see also Heilweil*, 32 F.3d at 723 (affirming dismissal of plaintiff's complaint on summary judgment where plaintiff was not disabled, in part because "no medical proof substantiate[d]" plaintiff's claim of disability).  In any event, this action must be dismissed because, as discussed below, Plaintiff has failed to meet his burden to show that he suffered any discrimination or retaliation.

II.    <u>Discrimination</u>

  a.    <u>Prima Facie Case</u>

  For purposes of this analysis of Plaintiff's prima facie case, the Court assumes that Plaintiff has put forth sufficient evidence to show that he is a handicapped person under the ADA and Rehabilitation Act.  The second prong is also met, given that the evidence shows that there is no genuine dispute of fact regarding whether Plaintiff generally possessed the qualifications to perform his job.

  To establish the third prong, Plaintiff must show that "the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent," a burden which the Supreme Court has described as "minimal."  *See Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (citing *Holcomb v. Iona College*, 521 F.3d 130, 138 (2d Cir. 2008)).

Defendant contends that Plaintiff has not alleged an adverse employment action with respect to several of Plaintiff's alleged claims.  The Court disagrees.

"A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment."  *City of Syracuse*, 673 F.3d at 150. Examples that may constitute adverse employment actions include "termination, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation."  *Sanders v. N.Y. City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (citing *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)).  Any change in employment, however, must be "more disruptive than a mere inconvenience or an alteration of job responsibilities" to constitute an adverse employment action.  *Id.* (citing *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006)); *see also Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (to constitute an "adverse employment action," plaintiff must present evidence that the employment action deprived plaintiff of some "tangible job benefits such as compensation, terms, conditions, or privileges of employment") (internal quotations omitted).  A plaintiff also may satisfy its burden by showing that the new work assignment was "materially less prestigious, materially less suited to his [or her] skills and expertise, or materially less conducive to career advancement."  *Galabya*, 202 F.3d at 641.  "Changes in assignments or duties that do not 'radical[ly] change' the nature of work are not typically adverse employment actions."  *Weisbecker v. Sayville Union Free Sch. Dist.*, 890 F. Supp. 2d 215, 233 (E.D.N.Y. 2012) (citing *Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 641 (2d Cir. 2000)); *see also Johnson v. Cnty. of Nassau*, 480 F. Supp. 2d 581, 595 (E.D.N.Y. 2007) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (a "bruised ego," a "demotion without change in pay, benefits, duties, or prestige," or "reassignment to [a]

more inconvenient job" all are insufficient to constitute a tangible or material adverse employment action").

Plaintiff alleges three cognizable adverse employment actions: (1) he was denied a promotion, (2) received unequal terms and conditions of employment, and (3) received a decrease in employment grade and pay.  (Dkt. 1 at 3.)  And although it is not alleged in his complaint, and Plaintiff has not amended the complaint or otherwise supplemented the record, Plaintiff evidently was terminated from employment in approximately February 2012.  (*See* Dkt. 41-2 at 18.)   Each of those four employment actions manifestly constitutes an adverse employment action, in that they resulted in a decrease in salary, loss of prestige, significantly diminished material responsibilities, or a material loss of benefits.[5]   Accordingly, Plaintiff has sufficiently demonstrated that he suffered one or more adverse employment actions.

Under the third prong of the analysis, Plaintiff also must show that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.  *Alfano*, 294 F.3d at 373 ("there must be a link between the discrimination" and the loss of some "tangible job benefit").  Plaintiff may offer direct evidence of such discrimination, such as expressly discriminatory comments or conduct, *see Whethers*, 2013 WL 3423111, at *10 (E.D.N.Y. July 8, 2013), or by presenting evidence permitting an inference of discrimination,

---

[5] Plaintiff additionally suggests in his EEOC complaint, incorporated by reference in his complaint in this action, that he was threatened with demotion or dismissal and his cases were subjected to 100% review.  The Court views the threat of demotion or dismissal as subsumed by Plaintiff's ultimate termination.  As to Plaintiff's other claim, the Court finds that being subjected to 100% review is not, in itself, an adverse employment action since there is nothing inherently "adverse" about being subject to a work performance review.  *See Sanders*, 361 F.3d at 755 (adverse employment actions include  "termination, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation").

such as disparate treatment of Plaintiff, *see Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000).

Although Defendant characterizes Plaintiff's "non-performance based" complaints as potentially adverse employment actions (Dkt. 40 at 9–12)[6], these events are better described as evidence possibly showing discrimination or permitting an inference of discrimination. Plaintiff's complaints are that (1) his manager and co-workers ignored him and made him feel out of place and unwelcome at work place events; (2) his manager inquired as to whether he was taking medication for his psoriasis; (3) his manager suggested he consider moving to a remote location in the office that was isolated from other employees; and (4) he received an anonymous letter from a colleague suggesting a treatment option for Plaintiff's psoriasis. *See* (Dkt. 40 at 9.)[7]

Even under the "minimal" burden that Plaintiff bears at this stage to show discriminatory intent, none of these incidents or any of the circumstances surrounding them demonstrates a connection between the alleged discrimination and any adverse employment action. Instead, Plaintiff's interactions with his managers and co-workers demonstrate their sensitivity and sense

---

[6] Defendant construes Plaintiff's complaint as alleging the same adverse employment actions that are identified in the EEOC's opinion denying Plaintiff's appeal. (Dkt. 42-8 at 1–2; Dkt. 40 at 9.)

[7] Even if Defendant's non-performance based activities could be construed as adverse employment actions insofar as they altered Plaintiff's work environment, they would fail to rise to the level of adverse employment actions. Discussions regarding Plaintiff's condition with his manager, Ms. Donovan, do not constitute a "materially adverse change in the terms and conditions" of Plaintiff's employment. *City of Syracuse*, 673 F.3d at 150. Ms. Donovan's suggestion that Plaintiff work in a remote area of the office was not an adverse employment action for the same reasons. The same goes for Plaintiff's receipt of an anonymous letter from a self-described "co-worker," in which the co-worker expressed concern for Plaintiff's psoriasis and suggested a treatment option. None of these actions constitute an adverse employment action, and are better understood as potential evidence of discrimination. *See Sanders*, 361 F.3d at 755 (adverse employment actions include "termination, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation").

of concern regarding his psoriatic condition and related health issues.  Plaintiff openly discussed his psoriasis and his treatment with his supervisor Carol Donovan.  (St. ¶¶ 22, 39.)  Even the letter sent anonymously by Plaintiff's co-worker, which indicated that some of Plaintiff's co-workers were uncomfortable about his condition, also expressed sympathy for Plaintiff and suggested treatment options for his condition.  (Dkt. 41-8.)  Furthermore, after Plaintiff brought the letter to Ms. Donovan's attention, she took immediate corrective action, convening a meeting of Plaintiff's co-workers, during which she admonished them that such conduct was inappropriate.  (Dkt. 41-4 ¶ 44.)

With respect to his claim that co-workers excluded him or made him feel left out, Plaintiff offers only ambiguous, anecdotal examples of workplace interactions, none of which indicate discriminatory animus.  (*See, e.g.*, Dkt. 41-3 at 108) (testifying that plaintiff "felt uncomfortable going and sitting down with anybody but a couple of my male friends.  The others would sit somewhere else and I was not welcome").[8]  As hurtful as Plaintiff may have found these comments or actions, his subjective perceptions of them alone are not enough to establish discriminatory motive.  *See Whethers*, 2013 WL 3423111, at *10 ("[a] plaintiff's speculations, generalities, and gut feelings, however genuine, when they are not supported by specific facts, do not allow for an inference of discrimination to be drawn").[9]

---

[8] Notably, the EEOC reject Plaintiff's claims that his "manager and co-workers ignored him, treated him like an outsider, made him feel unwelcome, and did not invite him to office events." (Dkt. 41-1 at ECF 7, 9.)  The EEOC determined that "[t]he record reveals that co-workers treated [Plaintiff] with courtesy and [Plaintiff] was included in team parties for birthdays and other celebrations.  (Dkt. 41-1 at ECF 9.)

[9] Regarding Plaintiff's claim that Ms. Donovan suggested that he work in a remote area of the office, there is no evidence substantiating this assertion.  In fact, Donovan stated that after Plaintiff's union representative suggested he move to a cubicle that was not being used, Donovan stated she 'did not want him alienated from our unit and Dennis was to stay in my unit."  (Dkt. 41-4 ¶ 19.)  Furthermore, there is no basis for concluding that this suggestion, had Donovan

"It is well established that Title VII does not set forth 'a general civility code for the American workplace,' . . . but rather is limited to the prevention of discrimination based on gender (or other protected characteristics)." *Krasner v. HSH Nordbank*, 680 F. Supp. 2d 502, 519 (S.D.N.Y. 2010) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)); *see also Bickerstaff v. Vassar College*, 196 F.3d 435, 452 (2d Cir. 1999) (internal quotations omitted) ("Title VII is not a general civility code.")  The record evidence does not demonstrate a discriminatory culture, or one of animus towards Plaintiff on account of his disability.  (*See* Dkt. 41-4 ¶ 10, 11) (Donovan's sworn declaration for EEOC investigation stating that Plaintiff "said he was embarrassed about his condition and thought people were grossed out about him.  I told him not to feel that way[,] that everyone had compassion for him and they understood how much pain he was in").  Mere mention of one's medical condition does not evince discriminatory animus, especially when the plaintiff publicly discusses his/her condition with supervisors and colleagues, and their comments are made out of apparent concern.  (St. ¶¶ 38, 39.)

Furthermore, even assuming *arguendo*, that there was a genuine issue regarding the existence of discriminatory intent based on the comments of Plaintiff's supervisor and co-workers, there is absolutely no evidence of any connection between these comments and any adverse employment action.  *See Johnson v. Cnty. of Nassau*, 480 F. Supp. 2d 581, 599–600 (E.D.N.Y. 2007) (finding that a comment by plaintiff's supervisor was a "stray remark" that was "insufficient to raise an inference of discrimination because there [was] no nexus between his remark and any of the alleged adverse acts."); *Tomassi v. Insignia Fin. Grp, Inc.*, 478 F.3d 111,

---

made it, reflected any discriminatory intent.  Indeed, Plaintiff's claim is too vague and lacking in support to allow any inference to be drawn.

115 (2d Cir. 2007) ("the more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination").

In short, Plaintiff "has identified no evidence, whether direct or circumstantial, that would permit a reasonable fact-finder to draw an inference that [the alleged adverse employment actions were] the result of unlawful discrimination against [him]." *Wali v. One Source Co.*, 678 F. Supp. 2d 170, 182 (S.D.N.Y. 2009) (citing *Velez v. SES Operating Corp.*, 07-CV-10946(DLC), 2009 WL 3817461, at *9 (S.D.N.Y. Nov. 12, 2009)).   On this basis alone, Plaintiff's action must be dismissed.

### b.   Non-Discriminatory Justification

Even if Plaintiff were able to establish a prima facie case of discrimination, Defendant has established a non-discriminatory justification for the alleged adverse employment action taken against Plaintiff. *See Holcomb*, 521 F.3d at 141 (once plaintiff establishes prima facie case of discrimination, burden of production shifts to defendant to show a legitimate, non-discriminatory justification for the adverse employment action) (citing *Hicks*, 509 U.S. at 509).

Defendant avers that Plaintiff was fired for poor work performance, and has submitted substantial evidence that Plaintiff was performing at a subpar level.  (Dkt. 40 at 13–14; Dkt. 41-5, 41-7.)[10]   Plaintiff was counseled several times on his work performance issues.  (*See, e.g.*, Dkt. 41-5, 41-7.)  Plaintiff was struggling in areas such as time management, tax knowledge and tax return processing, and accuracy.  (Dkt. 41-7.)   When Plaintiff continued to experience

---

[10] Based on the Court's earlier findings, *see supra* at 15 n.5, the Court does not separately consider Plaintiff's claims with respect to being threatened with demotion or dismissed or being subjected to a 100% review with regard to this issue.  In any event, evidence of poor work performance would establish a legitimate, non-discriminatory reason for Defendant to have undertaken these actions.  Furthermore, although Plaintiff alleges that he was not promoted (Dkt. 1 at 3), he provides no specifics or evidence regarding this claim, and, in fact, Plaintiff was promoted to the ASFR unit.

problems with his performance, he was placed on 60-day notice of intent to demote or terminate on August 25, 2008.  (St. ¶¶ 42–45; Dkt. 41-4 ¶ 7.)  Defendant provided additional on-the-job coaching to Plaintiff and additional review of his work, in an effort to improve his performance.  (St. ¶¶ 33, 41, 43.)  After Plaintiff failed to improve, he was terminated in or about February 2012.  (Dkt. 41-8 at 18.)[11]

Poor work performance is well-established as a legitimate, nondiscriminatory reason for firing an employee.  *See Auguste v. N.Y. Presbyterian Med. Ctr.*, 593 F. Supp. 2d 659, 666 (S.D.N.Y. 2009).  No credibility assessment of Defendant's asserted reason is permitted at this stage because Defendant's burden is one of production, not persuasion.  *Hicks*, 509 U.S. at 509.  Defendant has submitted substantial, unrefuted evidence showing that Plaintiff's termination and non-promotion were a result of his unsatisfactory work performance.  (*See, e.g.*, St. ¶¶ 32–35; 41–46; Dkt. 41-7; Dkt. 41-4 ¶ 24.)  Accordingly, Defendant has met his burden of showing a legitimate, non-discriminatory justification for the Court to proceed the next step in the *McDonnell Douglas* analysis.

c.  Pretext

Given that Defendant has set forth a legitimate, nondiscriminatory justification for the adverse employment action, Plaintiff then may present evidence showing that Defendant's asserted reason is pretext for discrimination.  *See Hicks*, 509 U.S. at 515–16.  Plaintiff may demonstrate that a reasonable fact finder could conclude "that [his] dismissal [or other adverse employment action] was motivated at least in part by [] discrimination."  *Tomassi*, 478 F.3d at 114 (2d Cir. 2007) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43

---

[11] It is unclear from the record precisely when Plaintiff was terminated.  Plaintiff testified at his March 2, 2012 deposition that he was fired "[a]bout a month ago – about two weeks ago," placing his date of termination at or about February, 2012 (Dkt. 41-2 at 18.)  Nevertheless, Plaintiff filed his discrimination complaint on November 17, 2010, prior to his termination.

(2000)).  Notably, merely proving that a defendant's asserted reason is false is not enough. Plaintiff must show both that the asserted reason is false *and* that discrimination was the real reason for the adverse employment action.  *Hicks*, 509 U.S. at 515–16.

Plaintiff does not attempt to rebut Defendant's justification for his termination.  He has provided no evidence of pretext or evidence that other, similarly situated employees not in his protected class were treated differently despite similar work performance issues, which could permit an inference of discrimination.  Nothing in the record indicates that Defendant's stated reasons are pretextual.  Rather, the record reflects Defendant's attempts to assist Plaintiff to improve his work.  For example, Plaintiff testified that his colleagues at the IRS assisted him in completing his tasks.  (Dkt. 41-2 at 125–26 ("Q.  Did they give you different work or take any work away from you?  A.  No, because I always tried to accomplish my tasks that were given to me.  I mean, sometimes a guy would help me.  They would say, 'Wait, let me lower the chair for you, so that you don't have to bend down.'  They knew I had problems with all of my joints . . . .").  While Plaintiff complains about being subjected to 100% review of his work, this measure was implemented not only to ensure that his work was accurate, but to help him improve his work and make him more comfortable.  (St. ¶¶ 29, 41, 44.)  Furthermore, Defendant was treated no differently than other employees having difficulties at work and were consequently subjected to the same 100% review.  Such efforts at accommodation and assistance, especially when applied office-wide, are inconsistent with the alleged intent to discriminate.

III.   Retaliation

Plaintiff also claims that Defendant retaliated against him for filing an internal complaint of discrimination to Defendant.  (Dkt. 1 at 3; *see, e.g.*, Dkt. 41-3 at 69–70) (discussing 100%

review becoming "tedious" after he filed a "complaint of employment discrimination with the Department of the Treasury"). This is the only asserted basis for Plaintiff's retaliation claim.

"Title VII forbids any employer from 'discrimat[ing] against any of [its] employees . . . because he has made a charge, testified, assisted, or participated in any manner in a [Title VII] investigation, proceeding, or hearing.'" *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005) (citing 42 U.S.C. § 2000e-3(a)). To state a claim for retaliation, a plaintiff must prove that plaintiff's engagement in protected activity was a but-for cause of the alleged adverse employment action by the employer. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (U.S. 2013). Title VII retaliation claims are analyzed by a three-step burden shifting analysis, *see Jute*, 420 F.3d at 173, which follows the same framework for discrimination claims set forth in *McDonnell Douglas*.

Plaintiff has failed to establish a prima facie case of retaliation. The only basis set forth by Plaintiff for his retaliation complaint is that his work became "tedious" following his filing of the complaint because he was subject to 100% review, which Plaintiff alleges indicates retaliation. (Dkt. 41-3 at 69.) But Plaintiff's work already was subject to 100% review prior to the filing of his internal complaint. Plaintiff was placed on 100% work review as a result of his promotion to the ASFR unit in July 2007. (St. ¶ 18.) Plaintiff did not receive the anonymous letter, which he claims prompted his internal discrimination complaint, until approximately four months later, on November 23, 2007 (St. ¶47), and did not make his discrimination complaint until November 21, 2008, almost a year thereafter. (St. ¶ 51; Dkt. 41-10.) Thus, it is patently incorrect that the 100% review was imposed in retaliation for Plaintiff's filing of the internal complaint of discrimination.

Construing Plaintiff's complaint to raise the strongest arguments it suggests, Plaintiff possibly could allege that he eventually was terminated in retaliation for filing his internal discrimination complaint and/or filing this action.  Plaintiff made his internal complaint on November 21, 2008 and filed this action on November 17, 2010.  He was not terminated until approximately February 2012, nearly three and a half years after his internal complaint was filed and approximately 15 months after the initiation of this lawsuit.  (*See* Dkt. 41-2 at 18.)

Although the sequence of events might support an inference that Plaintiff was terminated in retaliation for filing one or both of his complaints, the Court does not find that these events are temporally proximate such that they should give rise to an inference of retaliation.  The Second Circuit has not expressly stated what amount of time elapsed between a complaint and a subsequent adverse employment action may defeat the inference, and has left the issue of temporal proximity to the discretion of district courts.  *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009).  The Second Circuit has found that as much as an eight-month gap will permit an inference of causation, *see Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45–46 (2d Cir. 1980), but also that as short as a three-month gap may be insufficient, *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85–86 (2d Cir. 1990).

Here, in the absence of any other evidence of retaliation, the time lags in this case—39 months and 15 months—far exceed the amount of time that would reasonably permit an inference of causation.  In cases where courts permitted an inference of retaliation where the lapse of time was several months, other evidence supported the plaintiff's contentions and rendered it plausible that supervisors intentionally delayed retaliation.  *See, e.g.*, *Espinal*, 558 F.3d at 129–30 ("It is plausible that the officers waited to exact their retaliation at an opportune time-as when Espinal was involved in a fight with another inmate-in order to have a ready

explanation for any injuries suffered by [plaintiff].")  Here there is no evidence to support an inference that Defendant intentionally delayed terminating Plaintiff in order to retaliate against him for making either the internal or current complaint of discrimination.  Furthermore, mere temporal proximity, without more, is not enough to meet Plaintiff's burden of showing pretext. *Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2*, 798 F. Supp. 2d 442, 457 (E.D.N.Y. 2011) ("The temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation. . . , but without more, such temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext.") (citing *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010)).  In sum, Plaintiff provides no basis from which to conclude he was retaliated against for making complaints about alleged discrimination, and his retaliation claim must therefore be dismissed.

*CONCLUSION*

For the reasons discussed herein, summary judgment is granted in favor of Defendant. Each party to bear its own costs and fees.  The Clerk of the Court hereby respectfully is directed to close the case.

SO ORDERED:


  /s Pamela K. Chen
PAMELA K. CHEN
United States District Judge


Dated: November 20, 2013
       Brooklyn, New York